NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, and Michael A. Wash, Appellants,

v.

Cirilo DEGOLLADO, Appellee.

No. 3–91–239–CV.

Court of Appeals of Texas, Austin.

Dec. 23, 1992.

Rehearing Overruled Feb. 17, 1993.

Steven M. Tipton, Robert D. Stokes, and Michael M. Probus, Jr. Austin, for appellants.

Erik C. Moebius, Austin, for appellee.

Before JONES, KIDD and B.A. SMITH, JJ.

KIDD, Justice.

This appeal arises out of a workers' compensation claim for injuries suffered by Cirilo Degollado while in the employ of Calvert Concrete Company ("Calvert"). National Farmers Union Property and Casualty Company ("National Farmers") was the workers' compensation carrier for Calvert. The trial court rendered judgment on a jury verdict in favor of Degollado, awarding total and permanent compensation benefits and attorneys' fees. National Farmers appeals the judgment of the trial court. Michael A. Wash appeals the portion of the judgment awarding attorneys' fees and reimbursement for taxable court costs. We will affirm the trial court's judgment in all respects.

## BACKGROUND

Cirilo Degollado worked as a day laborer in Jarrell, Texas, for Calvert, a producer of concrete drainage pipes, manhole covers, and cavities. On June 7, 1984, Degollado was injured when a 250–pound donut-shaped metal form he was moving fell on him. Degollado sustained severe injuries to his abdominal organs and was taken to Georgetown Hospital where he underwent a laparotomy, a type of abdominal surgery. This procedure revealed that Degollado had suffered multiple lacerations to his small bowel, making it necessary to remove his intestines from the body cavity and inspect them for cuts. The discovered lacerations were closed and a segmental resection of the small bowel was performed. After approximately a week in the hospital, Degollado was discharged. However, the next month complications arose and Degollado returned to the hospital. He was diagnosed as having an intra-abdominal abscess with systemic sepsis related to his previous trauma and small bowel lacerations. Degollado underwent additional surgery on his abdomen and was released from the hospital seven days later.

Unfortunately, Degollado's problems were not over. He continued to suffer from persistent exhaustion and fever. Consequently, he returned to Georgetown Hospital in July 1984. His attending physician was wary of performing another laparotomy and, therefore, suggested that Degollado be transferred to a different care

facility for further treatment. Three days later, Degollado was admitted to Scott & White Hospital where he underwent a CT scan which revealed an abscess on his liver. The abscess was drained and, after a two-week stay, Degollado was discharged from the hospital.

Degollado returned to work at Calvert in September 1984, despite the fact that he was still weak from his injuries. Upon his return he was given light duty, primarily cleaning up around the work-site. Calvert provided him with this work in the hope that Degollado would soon be able to resume his full duties. However, Degollado never completely regained his strength and on April 3, 1985, he suffered a stroke from which he never fully recovered.[1]

At trial, the primary point of contention between National Farmers and Degollado was whether the June 1984 injury resulted in Degollado's incapacity. National Farmers argued that the stroke was the sole producing cause of Degollado's disability. Degollado maintained that both the accident and the stroke were producing causes of his permanent and total incapacity and, therefore, he was entitled to recovery.[2]

The jury was appropriately instructed as follows:

"Producing cause" means an efficient, exciting, or contributing cause from an injury or condition which, in a natural sequence, produces incapacity and without which cause such incapacity would not have occurred when it did.

There may be more than one producing cause of incapacity but there can be only one sole cause of incapacity. If Cirilo Degollado's incapacity was solely caused by his stroke; [sic] independent of and not aggravated by his injury of June 7, 1984, then his injury of June 7, 1984, cannot be a producing cause of any incapacity.

The jury returned a verdict in favor of Degollado, finding that his June 1984 inju-ry was a producing cause of total incapacity, and that his total incapacity was permanent. The trial court rendered judgment on the verdict, awarding compensation benefits and attorneys' fees. National Farmers appeals the judgment awarding Degollado workers' compensation benefits. Wash appeals that portion of the judgment which awards and apportions attorneys' fees.

## DISCUSSION

### Jury Findings

National Farmers brings three points of error. In points of error one and two, it attacks the jury's finding that the June 1984 injury was a producing cause of Degollado's total and permanent incapacity. National Farmers claims not only that no evidence exists to support the jury finding, but also that the evidence conclusively proved that the injury was not a producing cause of Degollado's total incapacity after his stroke of April 1985. In its third point of error, National Farmers argues that no evidence exists to support the jury's answer that the total incapacity produced by the June 1984 injury was permanent in duration.

We note at the outset that all three points of error attack the legal sufficiency of the evidence; in that they attack the jury findings on either a "conclusive evidence" point or a "no evidence" point. The test for a conclusive evidence point of error is similar to the test for a no evidence point. In both instances, the process begins with a search for "some evidence." For a no evidence point, the search stops once the court finds some evidence to support the jury finding. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986), *cert. denied*, 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990).

■ Where a proponent attacks a jury finding by arguing that the evidence on a fact question conclusively established the

---

1. Degollado suffered a second stroke on March 19, 1989.

2. At trial, Degollado also attempted to prove the abdominal injury was a producing cause of the stroke which resulted in total and permanent incapacity. We do not discuss this evidence as it is unnecessary to our disposition of this case.

opposite of the jury finding, we first consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. If there is some evidence to support the jury finding, the inquiry stops. Whatever the proponent's evidence, it cannot be conclusive if opposing evidence is in the record. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690–91 (Tex.1989). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 523 (1991).

In its first two points of error, National Farmers attacks the jury finding that the work-related injury was a producing cause of total incapacity. Prior to his stroke in April 1985, Degollado returned to work but was unable to perform all of his normal job duties. Nevertheless, National Farmers argues that at least since April 1985, the sole cause of Degollado's inability to work has been the stroke, not the accident. Consequently, the carrier reasons that there is no evidence in this record to sustain the jury finding that the accident was a producing cause of total incapacity following Degollado's stroke. We reject the carrier's argument because it is based upon a misconception of workers' compensation law.

■ The Texas Workers' Compensation Act is a remedial statute and must be liberally construed with a view toward accomplishing its purpose and promoting justice. *Texas Emp. Ins. Ass'n v. Thomas*, 415 S.W.2d 18, 19 (Tex.Civ.App.—Fort Worth 1967, no writ). The Act is to be liberally construed in favor of the injured employee, to afford to the worker the relief intended under the Act and to effectuate the beneficial purposes of the legislation. *Miears v. Industrial Accident Bd.*, 149 Tex. 270, 232 S.W.2d 671, 675 (1950). In the instant cause, Degollado had the burden of proving his total incapacity. Accordingly, the trial court appropriately instructed the jury as follows:

> "Total incapacity" does not mean absolute inability to perform any kind of labor, but means that a person is disabled from performing the usual tasks of a worker, not merely the usual tasks of

any particular trade or occupation, to such an extent that he cannot get and keep employment.

■ On appeal, National Farmers conceded at oral argument that the jury could find Degollado totally incapacitated even though he had returned to some form of light work. Indeed, the fact that an injured employee returns to work does not necessarily mean that the employee is not totally incapacitated. *Northwestern Nat. Ins. Co. v. Garcia*, 729 S.W.2d 321, 326 (Tex.App.—El Paso 1987, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Williams*, 662 S.W.2d 728, 732 (Tex.App.—Houston [14th Dist.] 1983, no writ). An injured employee can return to work and still be considered totally incapacitated, despite the fact that he does the same work he did before he was injured. *Standard Fire Ins. Co. v. Rice*, 730 S.W.2d 868, 871 (Tex. App.—Waco 1987, no writ).

■ Degollado's burden consisted of showing, by a preponderance of the evidence, that the June 1984 injury was a producing cause of his incapacity. A workers' compensation claimant need not prove that his work-related injury is the sole cause of his incapacity. There may be more than one producing cause of incapacity. *St. Paul Fire & Marine Ins. Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744, 749 (1962). Once Degollado proved that the work-related injury was *a* producing cause of his incapacity, National Farmers was liable for the entire disability to which both the injury and the stroke contributed. *See Liberty Mut. Ins. Co. v. Peoples*, 595 S.W.2d 135, 140 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.).

■ Because the stroke was totally incapacitating, however, National Farmers argues that the June 1984 injury was no longer a "producing cause" of incapacity. We reject this analysis. To defeat a workers' compensation claim because of an unrelated injury or condition, the carrier must show that the unrelated condition is the *sole cause* of the claimant's present incapacity. *Texas Employers' Ins. Ass'n v. Page*, 553 S.W.2d 98, 100 (Tex.1977); *International Ins. Co. v. Hernandez*, 659

S.W.2d 922, 923 (Tex.App.—Corpus Christi 1983, no writ). The carrier had the burden of proving that the stroke was the sole cause of Degollado's total incapacity. Degollado's only burden was to prove that the injury was one of the producing causes of his total incapacity. The jury resolved this conflict in Degollado's favor. National Farmers would require that we shift the burden of proof to require Degollado to establish the injury as the sole cause of incapacity. This we decline to do. Ample evidence existed in the record that would rebut the proposition that Degollado's stroke was the sole cause of his total incapacity. Degollado's family members testified that prior to his stroke, Degollado suffered from general malaise and a persistent loss of bowel and bladder function. His supervisor testified that although Degollado had returned to work, he had never regained his former work capacity and was continuing to suffer symptoms directly related to his injury. There were medical records evincing the fact that Degollado had to undergo surgery on numerous occasions and that his abdominal structure had been permanently altered as a result of the multiple operations. After weighing this evidence, the jury rejected National Farmers' position that the stroke was the sole cause of Degollado's total incapacity. The evidence outlined above supports that finding.

Nevertheless, National Farmers maintains that because payment of compensation is in lieu of wages, where wages would cease so should compensation, citing *Bailey v. Travelers Insurance Co.*, 383 S.W.2d 562 (Tex.1964). Consequently, it argues that because Degollado's wages would have ceased upon his stroke, Degollado is not entitled to compensation. National Farmers' reliance on *Bailey* is misplaced. *Bailey* stands for the proposition that, where a claim has not been reduced to a final judgment before death, a claimant's work-related injury is compensable only for that amount of time for which it is a producing cause of incapacity. If there is an intervening occurrence that is the sole cause of incapacity and is unrelated to the workers' compensation claim, the claimant may recover compensation only for the period of time up to that intervening cause. At the outset of its discussion, the court explained that "[i]t is assumed here that the cause of [the claimant's] death was not related to his compensable injury." *Id.* at 563. *Bailey* did not change the rule that there may be more than one producing cause of an incapacity. Rather, it assumed from the start that the intervening injury was the sole cause of the claimant's injury. For National Farmers to take advantage of *Bailey*, it would have to show that the stroke was the sole producing cause of Degollado's incapacity. This it failed to do. Therefore, because ample evidence exists in the record to support the conclusion that the June 7, 1984 injury was a producing cause of Degollado's total incapacity, we overrule points of error one and two.

In its third point of error, National Farmers contends that there was no evidence to support the jury finding that the total incapacity produced by the injury of June 7, 1984, was permanent in duration. Again, we disagree. A jury may reasonably infer permanent incapacity from circumstantial evidence or the competent testimony of lay witnesses. *Texas Employers' Ins. Ass'n v. Ontiveros*, 570 S.W.2d 98, 101 (Tex.Civ.App.—El Paso 1978, no writ). The question of the extent and duration of incapacity is an issue that can be answered by lay opinion and does not require medical testimony. *Reina v. General Accident Fire & Life Assurance Corp.*, 611 S.W.2d 415, 417 (Tex.1981). In fact, lay opinion testimony will support a finding of permanent incapacity even if directly contradicted by expert medical testimony. *Id.* At trial, there was ample evidence to support a jury finding of permanent incapacity. There was testimony in the record that at the time of his stroke, Degollado was still suffering from the effects of his abdominal injuries. For example, his supervisor, along with various family members, testified that Degollado's incapacity was due to the work-related injury. National Farmers' medical expert testified that septic shock, an infectious dysfunction from which Degollado suffered since his injury,

could cause a lowering of blood pressure or hypotension. Degollado's medical records revealed numerous medical problems resulting from his injury. The medical records alone would have supported a finding that Degollado's abdominal injury was permanent in nature. The jury's finding that Degollado's total incapacity was permanent is supported by ample evidence and, therefore, we overrule the carrier's third point of error.

### Attorney's Fees

We now turn to the dispute between the attorneys who represented Degollado in this cause. In an effort to recover for his work-related injury, Degollado retained Wash as counsel and filed a claim with the Industrial Accident Board ("the IAB") against Calvert's workers' compensation carrier, National Farmers. The IAB ruled in favor of Degollado and National Farmers filed suit in district court to set aside the ruling. Trial was set and Eric Moebius, an associate in Wash's office, prepared the case for trial.

Before trial, however, the relationship between Wash and Moebius soured and on August 16, 1990, Wash relieved Moebius of his duties, granting him thirty days to wind up his affairs. On September 21, 1990, Degollado mailed Wash a letter discharging him as counsel, indicating that Degollado had retained Moebius as his counsel. At that time, no written contract existed between Degollado and Moebius.

Moebius tried the case before a jury, which returned a verdict in favor of Degollado. Prior to rendition of judgment, however, Wash filed a petition in intervention, praying for an award of attorney's fees in an amount not to exceed twenty-five percent of Degollado's recovery and costs in the amount of $2363.87. After a hearing on Wash's intervention, the trial court found that a reasonable attorney's fee in this case was twenty-five percent of Degollado's recovery. The trial court then apportioned three-fourths of the fee to Moebius and one-fourth to Wash. The judgment was silent with respect to Wash's request for recovery of his non-taxable court costs.

In his seven points of error, Wash argues that he is entitled to the entire twenty-five percent attorney's fee plus recovery of costs incurred.

In his first two points of error, Wash claims that the trial court should have rendered judgment in his favor because the evidence established such judgment as a matter of law or, alternatively, that the trial court's failure to render judgment in his favor for the full twenty-five percent fee is against the overwhelming weight of the evidence.

At the time of Degollado's injury, the amount of attorney's fees recoverable in a workers' compensation case was regulated by the Act of March 6, 1969, 61st Leg., R.S., Ch. 18, § 7, 1969 Tex.Gen.Laws 48, 51–52 (Tex.Rev.Civ.Stat. art. 8306, § 7d (since repealed; see now Tex.Rev.Civ.Stat. Ann. art. 8308–4.09 (West 1993))). Section 7d provided that:

> For representing the interest of any claimant in any manner carried from the [Industrial Accident] Board into the courts, it shall be lawful for the attorney representing such interest to contract with any beneficiary under this law for an attorney's fee for such representation, not to exceed twenty-five percent (25%) of the amount recovered, such fee for services so rendered to be fixed and allowed by the trial court in which such matter may be heard and determined ...

Section 7d and its legislative successor, Tex.Rev.Civ.Stat.Ann. art. 8308–4.09 (West Supp.1993), empower the trial court, at its complete discretion, to fix and allow judgment for a reasonable attorney's fee. *Texas Employers' Ins. Ass'n v. Motley*, 491 S.W.2d 395, 397 (Tex.1973). An employee may select and contract for the services of an attorney, but any provision inserted for a particular fee does not have the binding force of an ordinary contract. *Fidelity Union Cas. Co. v. Dapperman*, 53 S.W.2d 845, 847 (Tex.Civ.App.—Amarillo 1932, writ ref'd). Attorney's fees shall not be awarded unless the trial court finds that benefits have accrued to the claimant by virtue of the legal representation, and then the award must be based on the value of

the services performed and the benefits accruing to the beneficiary. Act of March 6, 1969, 1969 Tex.Gen.Laws at 52; *See also* Tex.Rev.Civ.Stat.Ann. art. 8308–4.09(c) (West Supp.1993).

▇ Wash claims he has a "present beneficial interest" in the entire fee that the court awarded because he has a written contract with Degollado. Essentially, Wash argues that he has an ownership interest in whatever attorney's fees were awarded. Because Wash has a written contract that purports to give him a twenty-five percent contingent-fee interest, Wash argues he is entitled to the entire fee, citing *Texas Employers' Ins. Ass'n v. Lane*, 124 S.W.2d 893, 897 (Tex.Civ.App.— Dallas 1939, writ dism'd judgm't cor.). Section 7d "vests in the attorney a present beneficial interest in the [client's] claim ... which may not be divested by the client without a judicial ascertainment." *Id.* Wash claims that he has such an interest in twenty-five percent of Degollado's claim, which could not be divested by Degollado. We are unpersuaded because *Lane* is not on point. *Lane* was a workers' compensation case involving an individual plaintiff and an insurer-defendant that conspired with one another to deprive the plaintiff's attorney of his fee. The court correctly prevented the collusion, noting that "[t]he plaintiff and the defendant cannot control or settle the rights of the attorneys in the suit, without their knowledge or consent, thus depriving them of the fruits of their services rendered in the case." *Id.* at 898. Such is not the case here. There was no attempt to divest Wash of his claim; indeed, the trial court determined that he was entitled to a fee and awarded it to him accordingly.

▇ The "present beneficial interest" to which *Lane* referred is an attorney's vested interest in the right to have the *trial court* determine the amount of his fee. The interest does not "vest" in the client's claim because that would operate as an assignment of a part of the claim, which is prohibited. Act of May 5, 1983, 68th Leg., R.S., ch. 131, § 1, 1983 Tex.Gen.Laws 613, 613 (Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(b)

(since repealed; see now Tex.Rev.Civ.Stat. Ann. art. 8308—4.07 (West Supp.1993))). Section 3(b) provided that all compensation received by a claimant "shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable ... and any attempt to assign the same shall be void." *Id.* Although a worker may contract for the services of an attorney, he may not assign to the attorney an interest in the cause of action. Accordingly, any provision in an attorney-client contract purporting to vest in the attorney a specific portion of the client's claim is unenforceable. *Dapperman*, 53 S.W.2d at 847.

The trial court found that a reasonable attorney's fee in this dispute was twenty-five percent of Degollado's recovery and apportioned the award between Wash and Moebius. Our research has not revealed a first-party workers' compensation claim in which the worker was represented by more than one attorney for the same claim and, therefore, the question of fee splitting in this context has not been raised. Nevertheless, we think an apportionment between two or more attorneys in such a situation is proper and completely within the sound discretion of the trial court. The trial court clearly has the discretion to apportion an award of attorneys' fees in a third-party workers' compensation claim. *See* Tex.Rev.Civ.Stat.Ann. art. 8308–4.05 (West Supp.1993). We have not discovered any legislative bar to such action in the first-party context, nor do we note any overriding policy considerations which would weigh against allowing such apportionment. Indeed, a rule prohibiting fee splitting in this context would subvert the client's absolute right to select an attorney of his choice. Because the award of attorneys' fees was within the sound discretion of the trial court and Wash had no right to the entire fee as a matter of law, we overrule Wash's points of error one and two.

In his third point of error, Wash claims the trial court's failure to grant him the entire fee was an unconstitutional taking of

his property. Wash contends that the attorney's fees awarded to Moebius were based on the contract that Degollado had with Wash, and the trial court's award to Moebius of fees based on that contract constituted a taking of Wash's property. We disagree. Again, Wash's argument is based on the mistaken notion that a workers' compensation contract creates an ownership interest in the client's claim. An attorney never acquires an ownership interest in a worker's claim because that would act as an assignment, which is prohibited by statute. The fact Wash has a contract purporting to vest such an ownership interest is of no consequence, because to the extent it attempts to do so, it is void. *Dapperman*, 53 S.W.2d at 847.

Moreover, the trial court did not expressly base its attorneys' fee award on the written contract between Wash and Degollado. The relevant paragraph of the judgment does not mention the contract at all. Wash's assumption that the award was based solely on his contract stems from the post-trial hearing, where the trial court did make some reference to basing the award on the contract. In construing a judgment, however, we may not incorporate the court's expressions of opinion or reasoning from outside the judgment. A judgment is to be construed as written. *Bullock v. Regular Veterans Ass'n of the U.S. Post No. 76*, 806 S.W.2d 311, 315 (Tex.App.—Austin 1991, no writ).

Wash's rights pursuant to his contract of employment are subject to the terms and conditions of our workers' compensation statute. Because the court awarded attorney's fees in accordance with the statute, there has been no taking of Wash's property. Accordingly, we overrule point of error three.

In point of error four, Wash asserts that Moebius should not be entitled to recover his fee because there is no pleading to support such recovery. We find it unnecessary to reach this point, as it was not raised at the post-trial hearing. To preserve error for appeal, any omission or default in the pleadings must be specifically pointed out by exception and brought to the attention of the trial court. Tex. R.Civ.P. 90. We overrule point of error four.

In his fifth and sixth points of error, Wash complains that the trial court erred in fixing and allowing an award of attorney's fees to Moebius. Wash contends that because there is no evidence of a written contingent fee contract for legal services between Degollado and Moebius in the record, Moebius is not entitled to a fee. We disagree. As we have explained, the award of attorney's fees is wholly within the discretion of the trial court, and its award of attorneys' fees was proper. There was more than sufficient evidence to conclude that not only did a contract exist between Moebius and Degollado, but also that Moebius earned a reasonable fee. Moreover, although it was not introduced into evidence at the post-trial hearing, the written contract between Moebius and Degollado was in the record before rendition of the trial court's judgment. The workers' compensation act does not require that the attorney introduce a written contract into evidence to recover a fee. Consequently, we overrule points of error five and six.

In his seventh and final point of error, Wash complains that the trial court erred in not awarding him $2363.87 for expenses and costs incurred while pursuing Degollado's claim. Wash suggests that the judgment should be reformed to provide for payment of these costs.

At the post-trial hearing, Moebius stipulated in open court that he would pay these expenses upon receipt of his attorney's fees. We note that to the extent Wash is seeking reimbursement for taxable court costs, the trial court's judgment provides that all such costs are taxed against the defendant. These costs will be reimbursed through the Bell County District Clerk's Office. To the extent that Wash complains of other case expenses to be deducted from his former client's recovery, he was not entitled to have these costs and expenses apportioned within this final judgment. Wash's protection for these costs is Moebius' stipulation in open court and a potential

cause of action against Moebius if Wash's expenses are not reimbursed from Degollado's final recovery. Point of error seven is overruled.

## CONCLUSION

Finding no error, we affirm the judgment of the trial court in all respects.