TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00339-CV






Marvin Douglas Green, Jr., Appellant



v.



Texas Workers' Compensation Insurance Facility, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-01434, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 This is an "old law" workers' compensation case wherein appellant Marvin Douglas
Green argued he had been exposed to a chemical, trichlorethane, while working within the scope
of his employment for Raba-Kistner Consultants, Inc. ("Raba-Kistner"). The Texas Workers'
Compensation Commission (the "Commission") made an award based upon Green's formal notice
of injury and claim for compensation, and the Texas Workers' Compensation Insurance Facility
("TWCIF") appealed to district court. The jury found that Green had contracted an occupational
disease, (1) but that it was not a producing cause of any incapacity. After moving for entry of
judgment on the verdict, Green filed this appeal challenging in six points of error the trial court's
ruling excluding the testimony of Dr. William Rea, M.D. and the court's denial of Green's motion
for continuance and motion for new trial. (2) We will reverse the cause and remand it to the trial
court for new trial.


BACKGROUND

 The facts in this case are not greatly contested; the primary dispute involves
whether certain expert testimony should have been admitted for the jury's consideration. 
However, a brief recitation of the facts will help illuminate the disputed issues.

 Green worked for approximately one year between 1986 and 1987 in a laboratory
setting at Raba-Kistner; his primary activity involved testing concrete by dissolving asphalt
pavement with trichlorethane. The chemical devoured the tar, allowing the rocks to be separated. 
Green would then remove the rocks and burn the remaining chemical liquid into a vapor. He
testified that approximately seventy percent of his job description included this close exposure to
the chemical trichlorethane, in both its liquid and gaseous states, and that the laboratory setting
was poorly ventilated.

 Green testified that on April 16, 1987, after about six months of this exposure, he
suffered a severe respiratory attack and had to go to the emergency clinic. He explained his
symptoms as follows: "My throat was eaten up, felt raw. I was having a hard time breathing. 
My eyes were burning, my chest was burning, and I was just shaking and had a high fever. And
I felt really bad." The emergency clinic physician diagnosed him with acute pharyngitis. Green
testified that he returned to work five days later when his symptoms subsided. He continued
working at Raba-Kistner for some months, but left their employ in July because the symptoms he
described continued to plague him whenever he was exposed to chemicals. These reactions
continued, though less severe, after he left Raba-Kistner.

 Green saw several physicians in an attempt to diagnose and treat his recurring
symptoms, which by now included puffy, watery eyes, difficulty in breathing, bloody mucous, and
occasional rectal bleeding. He was eventually referred by his treating physicians to Dr. Rea in
April 1990. Dr. Rea is an experienced physician board certified in general surgery, cardiovascular
surgery, and environmental medicine. His practice by this time primarily focused on
environmental medicine. (3) Dr. Rea diagnosed Green with chemical exposure and developed a
treatment plan, which he oversaw for the seven years preceding trial. Dr. Rea's treatment plan
included at various stages avoidance, injection therapy, heat therapy, and mineral supplements. 
Dr. Rea also became Green's primary care physician.

 The Commission made an award on Green's Notice of Injury and Claim for
Compensation from the Raba-Kistner chemical exposure in January 1994. TWCIF appealed the
adverse award to district court. In a pretrial hearing, TWCIF objected to Dr. Rea's expert
testimony regarding causation, anticipating an explanation of his theories on "multiple chemical
sensitivity." After hearing argument, the trial court struck not only Dr. Rea's testimony on
causation, but all of Dr. Rea's testimony--including all testimony relating to his treatment of
Green for a seven year period. The trial court also overruled Green's motion for continuance. 
Trial commenced, and the jury found that Green had indeed contracted an occupational disease
as a result of his exposure to chemicals while employed at Raba-Kistner, but that he suffered no
partial or total incapacity as a result. Green moved for entry of judgment on the verdict, but also
brings this appeal.


DISCUSSION

 The threshold issue in this case involves the trial court's decision to exclude Dr.
Rea's testimony--all of Dr. Rea's testimony. We review a trial court's evidentiary ruling on an
abuse of discretion standard. See North Dallas Diagnostic Ctr. v. Dewberry, 900 S.W.2d 90, 93
(Tex. App.--Dallas 1995, writ denied). A trial court abuses its discretion only when it acts in an
unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 233, 236 (Tex. 1991); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert denied, 476 U.S. 1159 (1986). For
the exclusion of evidence to constitute reversible error, the complaining party must show (1) that
the trial court committed error and (2) that the error was reasonably calculated to cause and
probably did cause rendition of an improper judgment. McCraw v. Maris, 828 S.W.2d 756, 757
(Tex. 1992).

Waiver

 Before analyzing the trial court's evidentiary decision on Dr. Rea's testimony, we 
must first resolve TWCIF's contention that Green's motion for entry of judgment on the verdict
waived any errors for appeal. The jury's finding that Green incurred an occupational disease
entitled him to lifetime medical benefits. (4) Thus, Green was entitled to move and did move for
entry of judgment to obtain this relief. The jury's verdict denied Green additional relief when it
failed to find any partial or total incapacity as a result of that occupational disease. (5) Green
contends and always contended that the trial court committed reversible error in excluding Dr.
Rea's testimony, and this lack of medical evidence probably resulted in the jury's failure to find
any incapacity. 

 TWCIF refers us to cases which it argues stand for the proposition that a party must
move for entry of judgment only as to form to keep from waiving errors for purposes of appeal. 
See First Nat'l Bank of Beeville v. Fojtik, 775 S.W.2d 632, 633 (Tex. 1989); Litton Indus. Prods.,
Inc. v. Gammage, 668 S.W.2d 319, 321-22 (Tex. 1984). These cases, however, stand for the
more limited proposition that a party may not, after motion for entry of judgment on the verdict,
take a position on appeal inconsistent with that judgment. See Litton, 668 S.W.2d at 322 (after
moving for judgment on actual damages defendant entitled to appeal award of treble damages); see
also Miner-Dedrick Const. Corp. v. Mid-Cty Rental Serv. Inc., 603 S.W.2d 193, 198 (Tex. 1980)
(appellee moving for judgment on one interpretation of jury's findings entitled to complain that
findings based on another interpretation were against preponderance of evidence). Green has
never taken a position inconsistent with his contention that the exclusion of Dr. Rea's testimony
was error and resulted in the jury's failure to find any incapacity. Green was entitled to lifetime
medical benefits pursuant to the jury's verdict, and he moved for entry of judgment to preserve
that relief. The jury refused to find any partial or total incapacity, and it is this additional relief
which is at issue in this appeal. We hold Green has not waived error for purposes of this appeal.


Exclusion of Dr. Rea's Testimony

 TWCIF argues that Dr. Rea's testimony was properly excluded under Daubert v.
Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and DuPont v. C.R. Robinson, 923
S.W.2d 549 (Tex. 1995). Daubert and Robinson established the trial court's "gatekeeper" role
in determining the admissibility of scientific testimony. See Daubert, 509 U.S. at 589-94;
Robinson, 923 S.W.2d at 556. "In addition to being relevant, the underlying scientific technique
or principle must be reliable. Scientific evidence which is not grounded 'in the methods and
procedures of science' is no more than 'subjective belief or unsupported speculation.'" Robinson,
923 S.W.2d at 557 (quoting Daubert, 509 U.S. at 590). Robinson sets out six non-exclusive
criteria a trial court should consider in determining the admissibility of scientific testimony: (1)
the extent to which the theory has been or can be tested; (2) the extent to which the technique
relies on the subjective information of the expert; (3) whether the theory has been subjected to peer
review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying
theory or technique has been generally accepted by the relevant scientific community; and (6) the
non-judicial uses which have been made of the theory and techniques. See id. The trial court's
role, however, is not to determine the truth or falsity of the expert's opinion. Id. at 558. 
Moreover, the trial court must be careful not to step into the role of the fact finder in weighing
credibility, but should look only to establish a basic standard of reliability. See id. 

 TWCIF provided the trial court with several sources discrediting environmental
medicine as a discipline and the diagnosis of "multiple chemical sensitivity" in particular,
including two federal cases which rejected the theories of Dr. Rea and his colleague Dr. Alfred
Johnson on "multiple chemical sensitivity" as unreliable scientific evidence. (6) See Bradley v.
Brown, 852 F. Supp. 690 (N.D. Ind. 1994), aff'd, 42 F.3d 434 (7th Cir. 1994); Summers v.
Missouri Pac. R.R. Sys., 897 F. Supp. 533 (E.D. Okla. 1995). Based upon TWCIF's argument
and case authority, the trial court excluded Dr. Rea's testimony. The trial court initially limited
its ruling to Dr. Rea's expert testimony on causation, but eventually widened the scope of the
ruling to include any mention of Dr. Rea, including any testimony in his capacity as Green's
treating physician. 

 As mentioned, we test this decision on an abuse of discretion standard, which is a
heavy burden for Green to meet. See Robinson, 923 S.W.2d at 558. We begin with the
observation that medicine is as much art as science, and clinical medicine necessarily evolves from
a process of trial and error. As such, clinical medicine has traditionally been granted some leeway
in a determination of admissibility. A physician may not always be able to isolate to a
mathematical certainty why human beings react in certain ways or why certain ailments respond
to particular cures. This does not necessarily render such diagnoses and treatments ineffective or
unreliable. Unfortunately, we have yet to reduce all of life's mysteries to a discrete set of
scientific principles. 

 Of course, objective analysis is useful in medicine as in law. In fact, the record
suggests that Dr. Rea conducted numerous objective tests to determine the cause of Green's
symptoms, including skin challenge, inhale challenge, brain SPECT scan, immunological work-ups, nutrient levels, blood toxicity, anatomic nervous system evaluation, and SMAC (blood work-up tests). (7) Dr. Rea performed these tests in his capacity as Green's treating physician, not in
preparation for litigation. In weighing the Robinson factors, the question of whether the exclusion
of Dr. Rea's expert testimony was error is a close one. For the sake of argument, however, we
will assume without deciding that the trial court's decision to exclude the proffered testimony on
causation was within its discretion; we must still disagree with the trial court's ruling excluding
Dr. Rea's testimony in its entirety as being overbroad.

 Green argues that, even if Dr. Rea's expert testimony on causation is properly
excluded, Dr. Rea is also a fact witness by virtue of his status as Green's treating physician,
therefore much of his testimony is admissible and relevant to the issue of incapacity. We agree. 
Testimony on incapacity need not be limited to experts; a jury may reasonably infer incapacity
from circumstantial evidence or the competent testimony of lay witnesses. See National Farmers
Union Prop. & Casualty Co. v. Degollado, 844 S.W.2d 892, 897 (Tex. App.--Austin 1992, writ
denied). The question of the extent and duration of incapacity is an issue that can be answered by
lay opinion and does not require medical testimony. Id. In fact, lay opinion testimony will
support a finding of incapacity even if directly contradicted by expert medical testimony. Id. As
his treating physician, Dr. Rea saw Green regularly over a period of seven years and had occasion
to discuss and record his symptoms; Dr. Rea was therefore at least qualified to render a lay
opinion as to the extent of Green's incapacity. We hold it was error to exclude Dr. Rea's
testimony as a fact witness. 

 Moreover, by excluding even the mention of Dr. Rea's name, not to mention Dr.
Rea's observations and conclusions, the jury was left with a seven year gap on the issue of
incapacity. The jury heard testimony on the chemical exposure at Raba-Kistner, and also heard
evidence on Green's initial diagnosis and that of several of his treating physicians. In 1990,
however, all evidence from a treating physician ceased due to the ruling of the trial court. We
cannot say that this lack of any testimony on the issue of incapacity by a treating physician for a
period of seven years was harmless error. We conclude that the exclusion of this significant
testimony probably did cause the rendition of an improper judgment. See McCraw, 828 S.W.2d
at 757. Consequently, we sustain Green's third point of error. Because we sustain Green's third
point, we need not address his issues appealing the denial of his motions for continuance and for
new trial.

CONCLUSION

 Having held that the trial court erred in excluding all of the testimony of Dr. Rea,
including his testimony as a treating physician, we reverse the judgment of the trial court and
remand the cause for new trial.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Reversed and Remanded

Filed: May 20, 1999

Publish
1. Pursuant to the old workers' compensation law, whether Green contracted an "occupational
disease" was the appropriate inquiry for the jury in determining the consequences of an
employment related chemical exposure. See Tex. Rev. Civ. Stat. Ann. art. 8306, § 20 (West
1967).
2. Green's points of error are as follows: (1) the trial court erred in granting TWCIF's motion
in limine concerning the admissibility of testimony, records and reports of Dr. Rea because the
ruling was reasonably calculated to cause and probably did cause the rendition of an improper
verdict; (2) the trial court erred in not allowing the testimony of Dr. Rea; (3) the trial court erred
in not allowing any reference to be made concerning Dr. Rea during trial; (4) the trial court erred
in overruling appellant's motion for continuance; (5) the challenge to Dr. Rea's testimony was
untimely and constituted unfair surprise; and (6) the trial court erred in overruling appellant
Green's motion for new trial.
3. In his deposition, Dr. Rea described environmental medicine as "[T]he study of the effects
of any part of the environment upon the individual and how they react to it. For example it could
be exposure to pesticides, or it could be sensitive [sic] to some foods, or it could be bacteria, or
viruses that are causing the problems. . . . [The problem] comes from the external source in
contrast to internal." 
4. See Tex. Rev. Civ. Stat. Ann. art. 8306, § 7 (West 1967).
5. A finding of partial or total incapacity entitles the claimant to wage benefits. See Tex. Rev.
Civ. Stat. Ann. art. 8306, §§ 10, 11 (West 1967).
6. Green contends that the trial court has mischaracterized Dr. Rea's diagnosis of chemical
exposure as multiple chemical sensitivity in order to bring the diagnosis under previous rulings in
federal court excluding Dr. Rea's testimony. Because we decide this case on other grounds, we
need not address this issue.
7. Curiously, as a result of the trial court's ruling, the results of a blood test commissioned by
Rea and performed by an acknowledged expert were stricken, even though the results of this
presumably objective indicator showed traces of trichlorethane still in Green's blood years after
the initial exposure. 



l evidence or the competent testimony of lay witnesses. See National Farmers
Union Prop. & Casualty Co. v. Degollado, 844 S.W.2d 892, 897 (Tex. App.--Austin 1992, writ
denied). The question of the extent and duration of incapacity is an issue that can be answered by
lay opinion and does not require medical testimony. Id. In fact, lay opinion testimony will
support a finding of incapacity even if directly contradicted by expert medical testimony.