**TEX–HIO PARTNERSHIP, Wayne Dry, and Paul Emmett, Appellants,**

v.

**Ted GARNER, Appellee.**

**No. 05–02–01186–CV.**

Court of Appeals of Texas, Dallas.

May 28, 2003.

W. Bruce Monning, Monning & Wynne, L.L.P., Dallas, for appellants.

David M. O'Dens, Settle & Pou, P.C., Dallas, for appellee.

Before Justices MOSELEY, LANG, and LAGARDE.[1]

## OPINION

Opinion by Justice LANG.

The Tex–Hio Energy Partnership (Tex–Hio) brought suit against one of its partners, Ted E. Garner, appellee, for his share of the partnership's losses after the dissolution of the partnership. Appellee defended claiming he was not liable for any of the amounts claimed as losses since the partners did not comply with the partnership agreement by making written agreements authorizing expenditures in excess of $10,000. Tex–Hio filed a supplemental petition adding the individual partners, Dry, Emmett, and Fieldsmith, as plaintiffs and claiming any requirement for written authorization was waived by appellee.

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

A jury answered questions adversely to plaintiffs. The Plaintiffs' Motion for Judgment Notwithstanding the Verdict (appellants' motion) was overruled by the court. Then, the court entered judgment in favor of appellee that plaintiffs Tex–Hio, Dry, Emmett, and Fieldsmith take nothing. Only Dry and Emmett,[2] appellants herein, filed briefs in this appeal and claim in a single issue that the trial court erred by entering judgment in favor of appellee. We are requested by appellants to reverse and render judgment in their favor and against appellee, for a total of $37,250 to be apportioned to Emmett in the amount of $28,625 and to Dry in the amount of $8,625.

Appellee claims in two responsive issues that this court has no jurisdiction over appellants' appeal or over any claim of Fieldsmith. In two other responsive issues, appellee argues appellants cannot establish, as a matter of law, any right to recovery or damages. For the reasons that follow, we resolve appellee's jurisdictional issues against him. Finally, we need not address appellee's issues numbers three and four regarding appellants' right to recover or prove damages because we resolve appellants' issue against them and affirm the trial court's judgment.

## 1. Factual and Procedural Background

Dry, Emmett, Fieldsmith, and Garner formed the Tex–Hio Energy Partnership for the purpose of acquiring and operating oil and gas income producing property, particularly an existing field located in Ohio. Each partner contributed $100,000 as his initial investment in the partnership.

As provided by section 5 of the partnership agreement, signed April 2, 1986, all of the partners, jointly and individually, executed a promissory note in the amount of $650,000, payable to the order of First City Bank of Farmers Branch, Texas. The purpose of the loan was to finance part of the purchase price of the Ohio oil and gas properties. The partnership agreement provided in section 8 that "[a]ny net profits or losses that may accrue to the Partnership shall be distributed to or [be] borne by the Partners in equal proportions." The partners were unable to keep the field going and eventually the partnership ceased operations and wound up its affairs.

Tex–Hio filed suit against appellee, alleging that the partnership had been dissolved, was in the process of being wound up, and that it had suffered a loss of approximately $167,302.97 per partner. Initially, Tex–Hio sought to recover $67,302.97 from appellee, to be credited to the other three partners. It was claimed that Dry, Emmett and Fieldsmith bore a disproportionate share of the losses of Tex–Hio because of additional or "other" advances of funds each of them made for the partnership. Tex–Hio's legal premise was that Texas partnership law requires, upon dissolution, that losses are to be shared by the partners in the same proportions that they shared profits.[3] Tex–Hio further alleged that the exact amount of the partnership's losses needed to be determined and sought both an accounting to determine the amount of the losses and a judgment against Garner for his share of that amount.

---

**2.** Tex–Hio joined in the Notice of Appeal, did not file a brief on appeal, and presents no issues for review.

**3.** Tex–Hio cites TEX. REV. CIV. STAT. ANN. art. 6132b–4.01 (Vernon Supp.1999), which has been replaced by the Texas Revised Part-

nership Act art. 6132b–1.01 et seq. (Vernon Supp.2003), effective Jan. 1, 1999, (6132b–11.03 TRPA). The provision regarding the sharing of losses upon winding up is now contained in section 6132b–8.06(c) of TRPA.

Appellee filed a general denial and later a motion for summary judgment. The motion for summary judgment was not made a part of this record. However, plaintiffs' responsive pleading indicates that appellee claimed in the motion that he was not liable for any of the sums claimed to have been expended by the other partners because the partners made no agreements in writing authorizing the expenditures. Specifically, appellee claimed that the partnership agreement requires obligations in excess of $10,000 to be authorized in writing by all of the partners. In response to appellee's motion for summary judgment, Tex–Hio, Dry, Emmett, and Fieldsmith filed Plaintiffs' First Supplemental Petition, describing themselves collectively as plaintiffs. In the First Supplemental Petition, plaintiffs argued, among other points, that appellee had waived any right to complain about non-compliance with the written consent requirement for obligations in excess of $10,000.

The "written consent" requirement is contained in section 14 of the partnership agreement. It provides:

> [N]o partner shall incur any obligations in the name or on the credit of the Partnership exceeding Ten Thousand Dollars ($10,000.00) without the express written consent of the Partner or Partners. Any obligation incurred in violation of this provision shall be charged to and collected from the individual Partner incurring such obligation.

The case was tried to a jury and submitted on questions regarding whether, after entering into the written partnership agreement, the partners agreed to "new terms." These "new terms" included: 1) an agreement to pay Fieldsmith a management fee, and 2) an agreement that all of the partners would be responsible for "other advances referred to during trial."

The term "other advances referred to during trial," used in the jury question was not defined. Having submitted the question for the charge, appellants made no objection. The jury answered that there was no agreement to either of the alleged "new terms."

Tex–Hio, Dry, Emmett, and Fieldsmith filed the appellants' motion and appellee filed a motion for judgment based on the jury verdict. In their motion, appellants argued, for the first time, that advances made by appellants to reduce the $650,000 promissory note were not advances within the meaning of section 14 of the partnership agreement since the promissory note was expressly authorized in the partnership agreement. Further, appellants claimed that, as a matter of law, they were entitled to have these advances included in the final adjustment of accounts among the partners. The court denied appellants' motion and granted appellee's motion for judgment on the verdict.

Appellee's counsel submitted a proposed judgment to the court which named only Tex–Hio and appellee as parties. During the hearing on appellee's motion for judgment, after the court ruled, appellants' counsel requested that appellants' names be interlined, in handwriting, on the proposed judgment because they intended to be bound by the judgment. Based upon the representation, on the record, that appellants would be bound by the judgment, appellee's counsel agreed to the modification of the judgment, adding their names and Fieldsmith's [4] name. The court signed the modified judgment.

## 2. Appellate Issues

4. Fieldsmith was represented by separate counsel at the hearing on the motion for judgment notwithstanding the verdict. The reporter's record shows no discussion specifically regarding Fieldsmith, but he is included in the Final Judgment.

Appellants frame the issue on appeal as "Whether the trial court erred in signing a judgment that appellants recover nothing from Garner?" In three subsidiary issues appellants argue:

A. The trial court erred in denying Appellants' motion and in granting Appellee's motion because both the Tex–Hio partnership's agreement and the Texas Revised Partnership Act (TRPA) require that losses among the four partners be equalized, yet Dry and Emmett, together, lost $140,000 more than Garner.

B. The trial court erred in denying Appellants' motion and in granting Appellee's motion because the evidence is undisputed that Tex–Hio lost a total of $549,000, of that loss, Dry paid $160,000, Emmett paid $180,000, Fieldsmith paid $109,000 and Garner paid $100,000.

C. The trial court erred in denying Appellants' motion and in granting Appellee's motion because the evidence established that in order to equalize losses, Dry and Emmett (as their respective interests appear) should recover $37,250 from Garner, as required under the TRPA.

In its responsive issue number one, appellee argues that appellants Dry and Emmett were never properly joined as parties in the trial court, and they have no standing to appeal. Specifically, appellee asserts that appellants were first named in Plaintiffs' First Supplemental Petition, that pleading was insufficient to join them as parties and this Court lacks jurisdiction. Additionally, in responsive issue number two, appellee claims that appellants have improperly requested recovery of $9,000 in favor of Fieldsmith because he has not perfected an appeal. Further, in responsive issues numbers three and four, appellee argues the trial court's judgment should be affirmed, and that appellants cannot establish, as a matter of law, any right to recovery or damages.

### 3. Jurisdiction Over Appellants' Appeal

#### A. Applicable Law

In his first responsive issue, appellee claims appellants were not properly before the trial court because they purported to be added as parties in the supplemental petition. It is appellee's position that new parties may be added only through the filing of an amended petition. Hence, appellee reasons that appellants cannot be properly before this court and we do not have jurisdiction.

 Generally, one may bring new parties into a suit by an amended pleading, and not by a supplemental petition. *Hatley v. Schmidt*, 471 S.W.2d 440, 442 (Tex. Civ.App.-San Antonio 1971, writ ref'd n.r.e.). Ordinarily, a plaintiff's supplemental petition will assert special exceptions, general denials and allegations of new matters not before alleged, in reply to allegations made by the defendant. However, an exception to this rule exists if the necessity of adding a new party arises from facts pled in a defendant's "defensive pleading." *Intercity Investments Co. v. Plowman*, 542 S.W.2d 260, 263 (Tex.Civ. App.-Fort Worth 1976, no writ); *see also, Moody–Rambin Interests v. Moore*, 722 S.W.2d 790, 792 (Tex.App.-Houston [14th Dist.] 1987, no writ); *Ray v. Fowler*, 144 S.W.2d 665, 666 (Tex.Civ.App.-El Paso 1940, writ dism'd judgm't cor.).

#### B. Application of Law to Facts

 The Plaintiffs' First Supplemental Petition adds Fieldsmith, Dry, and Emmett as parties, and recites on its face that it is filed "in response to matters raised by Defendant Garner in his Motion for Summary Judgment." In the motion for summary judgment, appellee claimed he was

not liable for the expenditures sued for by Tex–Hio because the expenditures were not authorized in writing by the partners, as required by the partnership agreement. However, appellee never filed a more specific answer than a general denial. In their supplemental petition, appellants allege that appellee entered into express verbal agreements with the other three partners for every obligation exceeding $10,000, and that appellee has thereby waived any right to complain of any failure to obtain the written consent of the other partners. These allegations of waiver became the basis of appellants' case and the theory on which it was tried.

Appellee claims the general rule provides that in order for a court to have jurisdiction over parties added to a lawsuit, those new parties must be named in an amended petition. Appellee acknowledges an exception to the general rule, referred to as the *Plowman* exception, that parties may be added to a suit by naming them in a supplemental petition only if the supplemental petition is filed in response to a defendant's answer. *Plowman*, 542 S.W.2d at 260. Accordingly, appellee advises us that neither the trial court nor this court has jurisdiction over appellants Dry and Emmett because the attempted joinder by naming them as plaintiffs in a supplemental petition which responded to the motion for summary judgment does not meet the requirements of the general rule or the *Plowman* exception.

Indeed, *Plowman* does state the exception to the general rule set out above. However, in *Plowman*, the court specifically articulated that an attempted joinder of parties by naming them in a supplemental petition brings those parties within the court's jurisdiction only if the supplemental petition is filed in response to a "defensive pleading." *Plowman*, 542 S.W.2d at 263. In *Plowman*, the "defensive plead-

ing" was an answer which described specific defenses, thereby putting the plaintiff on "notice" of a need to plead in response to that defense and join additional defendants. *Id.* Also, it is important to note that the appellants in *Plowman*, the defendants added by the supplemental petition, made no objection to their joinder at the trial court and appeared in the case by the filing of a supplemental answer. Yet, on appeal, they claimed they were not properly before the court because the supplemental petition was an insufficient pleading to invoke the court's jurisdiction over them.

■ Of some importance to us in resolving this issue is the relaxed method of pleading used by appellee coupled with the means by which "notice" of appellee's defense was communicated which prompted the filing of the supplemental petition. The record reflects and the parties confirm that while appellee chose to file a motion for summary judgment which raised his affirmative defense, he maintained on file with the court only a general denial. The record reflects no objection by any plaintiff to the appellee's failure to include the affirmative defense in his answer. However, whether or not expressly intended by appellee, his method of pleading partook of an exception to standard summary judgment practice. The general rule directs that in order for a defendant to obtain a summary judgment based upon its affirmative defense, its trial pleadings must set forth the defense raised in the motion for summary judgment. However, the Texas Supreme Court has framed an exception to this rule by holding that "an unpleaded affirmative defense may also serve as the basis for a summary judgment when it is raised in the summary judgment motion, and the opposing party does not object to the lack of a rule 94 pleading in either its written response or before the rendition of judgment." *Roark v. Stallworth Oil and*

*Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991); *see also Webster v. Thomas,* 5 S.W.3d 287, 289 n. 1 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

The reasoning in *Plowman,* which supported the holding that the supplemental petition was sufficient to confer jurisdiction on new parties, focused on the fact that the supplemental petition was filed in response to a defensive pleading which put the plaintiff on "notice" of a defense. It is without question that the only "notice" plaintiff received in this case as to appellee's specific defense was appellee's motion for summary judgment. Had appellee adhered to the generally accepted motion for summary judgment practice, he would have amended his answer to include the defense which was set out in the motion for summary judgment. Further, had appellee chosen to file an amended answer, one could reasonably assume that the plaintiff's reaction would have been precisely the same as its reaction to the motion for summary judgment; i.e., the filing of the supplemental petition which joined the additional plaintiffs. Although appellee's motion for summary judgment may not be, technically, a "defensive pleading," it was the one and only means by which appellee gave "notice" of his sole defense to appellants. We are not persuaded to adopt appellee's argument that the *Plowman* exception is limited to the circumstances where a supplemental petition is filed in response to an answer. As in *Plowman,* the critical factor here is that the supplemental petition was filed in response to appellee's filings with the court which gave "notice" of appellee's defense. The *Plowman* exception is not so narrow as to exclude from its authority the circumstances before us.

▇▇▇ Even if the joinder of appellants had been defective, appellee waived any objection to the inclusion of the individual partners, including appellants, as parties. A party may not, after it pursues a motion for entry of judgment on the verdict and obtains its judgment, take a position on appeal inconsistent with that judgment. *See Green v. Texas Workers' Compensation Ins. Facility,* 993 S.W.2d 839, 843 (Tex.App.-Austin 1999, pet. denied). Although initially appellee took the position before the trial court that the appellants were not parties, appellee changed its position at the hearing on its motion for entry of judgment on the verdict and appellants' motion for judgment notwithstanding the verdict.[5] In response to the representation by appellants' counsel that appellants would be bound by the judgment and should be named as parties, appellee's counsel agreed to add appellants as parties. *See, Nipper–Bertram Trust v. Aldine Indep. School Dist.,* 76 S.W.3d 788, 794 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Appellee did not qualify his submission to the court of the form of judgment which included the interlinea-

5. We can find nothing in the record before us reflecting that motions, exceptions or written objections were filed by appellee to strike the supplemental petition or the appearance of appellants. While appellee's counsel twice raised the issue of whether Fieldsmith and appellants were properly before the court, the first time appellee objected was when his counsel invoked the "rule" at trial against non-party witnesses being present during other testimony. He claimed appellants were not parties and should be excluded from the courtroom. Plaintiffs agreed to exclusion of the individual plaintiffs during testimony of other witnesses, so the court did not rule. The second time appellee's counsel referred to the issue was during argument of Plaintiffs' Motion for Judgment Notwithstanding the Verdict. Appellee did not expressly raise the issue as an objection at the hearing, so the court did not rule. The parties do not cite to us any other rulings by the court relevant to this issue.

tions. Rather, he requested entry of this judgment in order to bind appellants. By adding Dry and Emmett as parties to the judgment without objection, appellee was not merely agreeing to the "form" of the judgment so as to preserve his objections. *See First Nat'l Bank of Beeville v. Fojtik,* 775 S.W.2d 632 (Tex.1989). Appellee is bound by the terms of the judgment. *See Casu v. Marathon Ref. Co.,* 896 S.W.2d 388, 392 (Tex.App.-Houston [1st Dist.] 1995, writ denied) ( [T]he rule in this Court is that where the litigant moves the trial court to enter a judgment, and the trial court enters the judgment, the litigant cannot later complain of that judgment, *period.*) Accordingly, we have jurisdiction to entertain the appeals of Dry and Emmett. Appellee's first responsive issue is resolved against him.

**4. Jurisdiction Over Fieldsmith's Claims**

As part of their argument on appeal, appellants claim it is undisputed that additional advances made by Fieldsmith to the partnership were part of the routine partnership business and did not exceed $10,000 in amount. Hence, they posit that Fieldsmith "is entitled to reimbursement for those expenses" under Texas partnership law. According to appellants, these expenses of Fieldsmith amount to $9,000. Appellants repeatedly state that Fieldsmith is not a party to this appeal. Yet, they claim that the $9,000 expended by Fieldsmith should be added to the expenditures of appellants to determine what is owed by appellee. According to appellants' calculation, when their contributions and the $9,000 Fieldsmith advance are shared proportionately by all the partners, the share due to be paid by appellee is a total of $37,250. Appellants ask this court to render judgment against appellee for $37,250 and to further divide it in favor of Emmett for $28,625 and Dry for $8,625.

Appellee argues that, if indeed, appellants are arguing for relief on behalf of Fieldsmith, this court has no jurisdiction to do so since Fieldsmith did not perfect an appeal.

■ It is clear appellants seek relief as to Fieldsmith's $9,000 expenditure. However, Fieldsmith did not file a notice of appeal. An appellate court may not grant a party, who does not file a notice of appeal, more favorable relief than did the trial court except for just cause. Tex. R.App. P. 25.1(c). Appellants have made no showing of "just cause." We hold that we can grant no relief to or for the benefit of Fieldsmith even if that relief were to inure ultimately to appellants' benefit. The $9,000 claim was Fieldsmith's and not appellants.' We have no jurisdiction over Fieldsmith's claims in this appeal. Appellee's second responsive issue is resolved in his favor.

**5. Appellants' Issues on Appeal**

**a. Discussion of Facts**

In its Original Petition, Tex–Hio cites general partnership law and the terms of the Tex–Hio partnership agreement for the proposition that the losses of Tex–Hio were to be shared equally by the partners. Tex–Hio estimated that it had lost approximately $167,000 per partner if the losses were divided equally. The petition alleged that although Dry, Emmett and Fieldsmith had continued to fund partnership obligations after making their initial contributions, appellee did not do so. Thus Tex–Hio sought to recover from appellee his share of the partnership losses, or, as alleged in the petition, $67,000.

Appellee responded with a motion for summary judgment when he claimed that he could not be charged with any losses sought by Tex–Hio because these losses were based on the other partners' unauthorized additional advances on behalf of the partnership. Appellee argued that ad-

vances which exceeded $10,000 were not binding on the other partners unless the other partners had agreed to such payments or advances in writing, in accordance with the provisions of section 14 of the Tex–Hio partnership agreement.

Plaintiffs' First Supplemental Petition was filed in response to appellee's motion. In their petition, appellants argued that appellee had waived any right to complain of their failure to comply with section 14 because appellee had agreed verbally to every obligation in excess of $10,000.

Appellants tried their case before a jury in a four-day trial. In their brief, appellants succinctly describe the focus of the trial:

> The central issues at trial were whether or not, after the written partnership agreement was signed, the parties unanimously agreed that (1) Fieldsmith would receive a monthly management fee, and (2) the partners would be responsible for the other advances referred to during the trial, e.g., the additional $60,000 advanced by Dry, the $80,000 advanced by Emmett, or the net $9,000 advanced by Fieldsmith.

According to appellants, the additional $60,000 and $80,000 payments were paid to First City Bank to reduce the $650,000 promissory note.

Appellants submitted the questions with which the jury was charged. Question No. 1 asked the jury as follows:

> After the written partnership agreement did all of the partners agree to the following new terms . . .
>
> A. That Fieldsmith was to receive a monthly management fee
>
> ANSWER:____
>
> B. That, in addition to their Initial Investments, the partners would be responsible for the other advances that were referred to during the trial

> ANSWER:____

No instruction was requested to define "other advances that were referred to during the trial" as referenced in Question No. 1, "B." Damage questions were submitted to the jury, but were expressly conditioned upon affirmative answers to Question No. 1. Because the jury answered both parts of Question No. 1, "NO," no additional questions were answered.

After the jury verdict was rendered, appellants filed their motion requesting judgment in their favor as a matter of law. In appellants' motion, they claimed specifically, for the first time, that no separate written agreement pursuant to section 14 was required to authorize the "other advances" made by appellants. Appellants argued that their "other advances" were payments on the $650,000 promissory note and that note was expressly authorized in the partnership agreement. Also, no agreement as to new terms was required since the advances were authorized as additional partner contributions by partnership law. Accordingly, they assert that the jury's finding that there was no agreement to "new terms" regarding these "other advances" was "immaterial" and should be disregarded.

On appeal, appellants claim that the trial court erred in refusing to grant appellants' motion, but instead granting appellee's motion for judgment on the jury's verdict. They argue that they are entitled to judgment as a matter of law. Additionally, appellants now argue, for the first time, that appellee should be liable for contribution to appellants because they paid disproportionate shares of an obligation on which appellee had joint and several liability. In response, appellee argues that appellants are not entitled to recover their advances as a matter of law and that the claim for common law contribution was not

preserved because it was not pled in the trial court.

### b. Application of Law to Facts

■ First, we address the appellants' claim for contribution. Neither appellants' original nor supplemental petition makes any claim for common law contribution. This claim was not before the trial court and cannot be considered by this Court. *See Bradt v. West,* 892 S.W.2d 56, 75 (Tex. App.-Houston [1st Dist.] 1994, writ denied).

■ Second, we address appellants' argument that appellants' motion should have been granted by the trial court because as a matter of law they are entitled to recover from appellee for the advances they made for the partnership. The grounds they assert are that the Texas Partnership law and the partnership agreement authorized recovery of the advances. Accordingly, appellants tell us, it was unnecessary for there to be any "new agreements" among the partners to authorize the advances. The specific authority cited and reasoning is in these two points: 1) under section 4.01(c) of the Texas Revised Partnership Act (TEX.REV.CIV. STAT. ANN. art. 6132b–1.01 et seq. (Vernon Supp. 2003)) a partner who reasonably makes a payment or advance to preserve the business or for the proper conduct of the business, "is entitled to be repaid by the partnership"; and 2) the partnership's $650,000 promissory note was authorized by the partnership agreement. Hence, any payments in reduction of the note were already authorized.

We are cited no case law in appellants' brief to support the specific claim that the trial court should have granted the appellants' motion. Appellants simply argue that the partnership law and the partnership agreement are sufficient to stand alone as support for recovery of the advances from appellee. However, we believe there is considerably more that must be analyzed to reach our decision. Specifically, a concern lingers before us about what legal support exists, if any, to authorize appellants, on the one hand, to submit jury questions asking for findings that the partners made agreements to "new terms" which authorized the "advances," yet, on the other hand, after an adverse jury verdict, to claim that the verdict should be disregarded and that no agreements were required since the advances were authorized as a matter of law.

We have reviewed the record and find that in appellants' motion appellants argued that the jury's answers to questions should be disregarded because the jury questions were "immaterial." Three cases were cited by appellants as to the "immateriality" proposition: *Triplex Comm., Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995); *Salinas v. Rafati,* 948 S.W.2d 286, 288 (Tex.1997); and *Spencer v. Eagle Star Ins. Co.,* 876 S.W.2d 154, 157 (Tex.1994). We will review those cases to determine whether they provide answers to our inquiry.

The *Triplex* case is cited for the proposition that if an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have a controlling question submitted to the jury. *Triplex,* 900 S.W.2d at 718. However, appellants cannot claim that they were denied the right to submit the controlling question to the jury. It was appellants who submitted the questions to the court that were included in the jury charge.

As to the *Salinas* and *Spencer* cases, appellants assert that these cases authorize courts to disregard answers to immaterial questions. However, appellants' interpretation of these cases is far too broad. The Texas Supreme Court held in those cases that a jury finding is immaterial and

may be disregarded if the question should not have been submitted to the jury or if the question, though properly submitted, was rendered immaterial by other findings.

The theory of "immateriality" of the jury questions is inapplicable to this case. The evidence offered by appellants at trial regarding advances for which they seek to recover included the payments they made on the $650,000 promissory note.[6] At trial and in the jury questions, appellants characterized the payments on the $650,000 promissory note as "other advances referred to during trial." In appellants' motion and on appeal, these advances were described differently; i.e., as payments or advances for the partnership in excess of their partnership contributions or as payments in reduction of an authorized promissory note. However, the facts did not change after the verdict. Appellants simply changed the label used to describe those facts when they filed their post-verdict motion. It is clear in the record of the argument made by appellants to the trial court at the hearing on appellants' motion that, after the adverse jury verdict, appellants simply sought to substitute a new and, what they hoped would be, more successful, theory for the one which the jury rejected when the case was tried.[7]

It is well settled that a case will not be reviewed by the appellate court on a different theory from that on which it was tried. *Catania v. Garage De Le Paix, Inc.*, 542 S.W.2d 239, 241 (Tex.Civ.App.-Tyler 1976, writ ref'd n.r.e.); *see also Davis v. Campbell*, 572 S.W.2d 660, 662 (Tex.1978). The issue regarding whether the partners agreed to new terms as to the "other advances" was tried to and decided by the jury. Once having submitted to the jury their theory of the case, appellants cannot change their theory in order to salvage the case. *See Furnace v. Furnace*, 783 S.W.2d 682, 685 (Tex.App.-Houston [14th Dist.] 1989, writ dism'd) (Having urged the trial court to find the trust agreement ambiguous and to submit the issue to the jury, appellants cannot now, following an unfavorable finding from the jury, argue that by the terms of the agreement they are entitled to judgment as a matter of law). Accordingly, appellants' issue on appeal is resolved against them.

### Conclusion

We resolve appellee's responsive issue number one against him and hold that Dry and Emmett were joined as parties, were properly before the trial court, and may bring this appeal. We resolve appellee's responsive issue number two in his favor and hold that we cannot grant the relief

---

**6.** Emmett testified that he had advanced $100,000 against the promissory note by allowing the bank to cash in his certificate of deposit and Dry testified that he had advanced $50,000. After the sale of some partnership equipment and a payment by Dry to Emmett, their net payments were: $60,000 for Dry, and $80,000 for Emmett.

**7.** At the hearing on appellants' motion for judgment notwithstanding the verdict, appellants' counsel stated " We submitted to the jury also the question of whether or not those advances were agreed to by the parties. I made a mistake in allowing—in not pointing out to the Court at the time of the jury objec-

tions to the charge that those questions were—were inoperative. In other words, they were superfluous because the partnership agreement provided—because the partnership agreement provided that each partner will be—all partners would have to agree before anyone is liable for more than $10,000 partnership contribution. And what I had overlooked at the time we objected to the charge was—and prepared the charge was that, in fact, all partners did agree to that $650,000 note and these—or 140 that was paid—that remains unpaid by Mr.—to Mr. Emmett and Mr. Dry was really payments they made in liquidation of that $650,000 note."

requested by appellants as to Fieldsmith. Appellants' issue on appeal is resolved against them and we affirm the judgment of the trial court below. Accordingly, we need not address appellee's responsive issues numbers three and four.